22

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION



FILED

MAR 2 9 2005

CLERK'S OFFICE
DETROIT

RANDALL S. LeFEVRE,

       Petitioner,

v.

HUGH WOLFENBARGER,

       Respondent.

_____/

CASE NO. 03-CV-71792-DT
JUDGE ROBERT H. CLELAND
MAGISTRATE JUDGE PAUL J. KOMIVES

## REPORT AND RECOMMENDATION

*Table of Contents*

I.     RECOMMENDATION ............................................................. 2
II.    REPORT ........................................................................ 2
    A.    *Procedural History* .................................................... 2
    B.    *Standard of Review* .................................................. 3
    C.    *Self-Representation Claim (Claim I)* ............................. 5
        1.    *Self-Representation and Access to Courts* ................. 6
            a. Access to Legal Materials ............................. 7
            b. Discovery/Experts ................................... 10
            c. Ineffective Assistance of Standby Counsel ......... 10
        2.    *Discovery/Expert Claims* .................................. 11
        1.    *Discovery* .................................................. 11
            a. Clearly Established Law ............................. 12
            b. Analysis ............................................. 13
        2.    *Experts* ................................................... 14
    D.    *Prosecutorial Misconduct Claims (Claim II)* ................... 16
        1.    *Procedural Default* ........................................ 16
        2.    *Merits of the Claim* ....................................... 19
            a. Clearly Established Law ............................. 19
            b. Analysis ............................................. 19
    E.    *Conclusion* ......................................................... 21
III.   NOTICE TO PARTIES REGARDING OBJECTIONS ........................... 21

1

I.       RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.      REPORT:

A.       *Procedural History*

1.       Petitioner Randall S. LeFevre is a state prisoner, currently confined at the Baraga Maximum Correctional Facility in Baraga, Michigan.

2.       On April 29, 1999, petitioner was convicted of one count each of assault with intent to commit great bodily harm less than murder, MICH. COMP. LAWS § 750.84; carjacking, MICH. COMP. LAWS § 750.529a; and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court. On May 24, 1999, he was sentenced as a second habitual offender, MICH. COMP. LAWS § 769.10, to a term of 10-15 years' imprisonment on the assault conviction, a concurrent term of 20-30 years' imprisonment on the carjacking conviction, and a mandatory consecutive term of two years' imprisonment on the felony-firearm conviction.

3.       Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.       RANDALL LEFEVRE'S CONVICTIONS MUST BE REVERSED WHERE THE STATE IMPEDED HIS RIGHT TO A MEANINGFUL OPPORTUNITY TO PREPARE A DEFENSE AND THEREBY VIOLATED MR. LEFEVRE'S DUE PROCESS RIGHTS AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS THIRTEEN AND SEVENTEEN OF THE MICHIGAN CONSTITUTION.

II.      THE PROSECUTOR'S COMMENTS DURING CLOSING ARGUMENT CONSTITUTE REVERSIBLE ERROR BECAUSE THE NUMEROSITY AND TIMING BEFORE THE CLOSING ARGUMENT OF PRO PER

2

DEFENDANT RANDALL LEFEVRE AFFECTED THE FAIRNESS, INTEGRITY, OR PUBLIC REPUTATION OF THE JUDICIAL PROCEEDINGS.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. See People v. LeFevre, No. 221296, 2001 WL 832987 (Mich. Ct. App. July 24, 2001) (per curiam).

4.      Petitioner sought leave to appeal these three issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. See People v. LeFevre, 466 Mich. 856, 643 N.W.2d 576 (2002).

5.      Petitioner, through counsel, filed the instant application for a writ of habeas corpus on May 29, 2003. As grounds for the writ of habeas corpus, he raises the two claims that he raised in the state courts.

6.      Respondent filed his answer on December 5, 2003. He contends that petitioner's prosecutorial misconduct claims are unexhausted or procedurally defaulted, and that both claims are without merit.

7.      Petitioner filed an amended brief in support of his petition on February 6, 2004.

B.      Standard of Review

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). See Lindh v. Murphy, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

3

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also, Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also, Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also, Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also, Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the

4

Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also, Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

C.     *Self-Representation Claim (Claim I)*

In his first claim, petitioner contends that he was denied the opportunity to present a meaningful defense. Petitioner represented himself at trial, with the assistance of standby counsel. Petitioner does not contend that his waiver of his right to counsel was defective. Rather, he contends that his *pro se* representation combined with the prosecutor's failure to produce discovery and his standby counsel's failure to turn over discovery that had been provided to him deprived him of the

5

ability to prepare a meaningful defense. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

      1.     *Self-Representation and Access to Courts*

The Sixth Amendment, applicable to the states through the Fourteenth Amendment Due Process Clause, provides that a criminal defendant shall have the right to the assistance of counsel in his defense. *See* U.S. CONST. amend. VI. This right necessarily implies its corollary, that a defendant has a right to proceed without counsel and represent himself. *See Martinez v. Court of Appeal of Cal., Fourth Appellate Dist.*, 528 U.S. 152, 154 (2000); *Faretta v. California*, 422 U.S. 806, 833-34 (1975). The right to assistance of counsel and the right to self-representation are thus correlative rights; the assertion of one necessarily constitutes a waiver of the other. *See United States v. Conder*, 423 F.2d 904, 908 (6th Cir. 1970). Nevertheless, a defendant's waiver of his right to counsel and decision to proceed *pro se* must be knowing and intelligent. *See Faretta*, 422 U.S. at 835; *Carnley v. Cochran*, 369 U.S. 506, 516 (1962). As the Supreme Court explained, in order for the defendant's decision to be knowing and voluntary, "he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).

There is no dispute that petitioner validly waived his right to counsel under *Faretta*. Petitioner does not claim here that his waiver was invalid. Rather, petitioner contends only that he was not able to effectively represent himself because he was unable to perform legal research, conduct discovery, or obtain the assistance of experts. In essence, petitioner contends that he was constructively deprived of his right to represent himself and that he was denied his right to access

6

the courts under *Bounds v. Smith*, 430 U.S. 817 (1977). The Court should conclude that petitioner

is not entitled to habeas relief on this claim.

### a. Access to Legal Materials

Petitioner first contends that he was denied his right to represent himself because he had only

limited access to legal materials during his pre-trial incarceration. The Sixth Circuit has discussed

the interplay between *Faretta* and *Bounds*, and found that *Bounds* does not provide an enhanced right

to conduct legal research to a defendant who represents himself:

> The appellant contends that the interplay between *Bounds v. Smith*, 430 U.S. 817, 97
> S.Ct. 1491, 52 L.Ed.2d 72 (1977), a Section 1983 action, and *Faretta v. California*,
> 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), mandates that a criminal
> defendant who waives his right to counsel be given access to an adequate law library
> to satisfy his constitutional right of access to the Courts. After careful examination
> of these cases, however, we decline to accept this reasoning.
>> In *Bounds, supra*, the Court specifically states:
>>> We hold, therefore, that the fundamental constitutional right
>>> of access to the courts requires prison authorities to assist inmates in
>>> the preparation and filing of meaningful legal papers by providing
>>> prisoners with adequate law libraries or adequate assistance from
>>> persons trained in the law. *Id.* 430 U.S. at 828, 97 S.Ct. at 1498.
>>> (emphasis added).
>> Clearly, then, the only application that Bounds has to pretrial detainees would
> be in civil matters because access to an adequate law library would never suffice as
> a constitutionally permissible replacement by the government for the right to the
> assistance of counsel in a criminal trial absent a voluntary waiver of counsel. The
> sixth amendment provides for an absolute right to the assistance of an attorney during
> the course of the pretrial detainee's criminal trial, and does not permit alternate
> means to achieve that goal despite the fact that *Bounds* suggests that in a civil trial
> the right of meaningful access to the court may be fulfilled by providing prisoners
> with adequate law libraries.
>> Although the defendant in a criminal matter may choose to waive his right to
> counsel, it would cut against the entire grain of our criminal justice system to suggest
> that in lieu of furnishing an indigent criminal defendant with appointed counsel, it
> would be constitutionally acceptable merely to give that defendant access to an
> adequate law library. Not only do we find that *Bounds* is not controlling in the
> context of a criminal trial, but we conclude that *Bounds* is completely inapplicable.
> Therefore, contrary to the appellant's contention, we find no interplay between
> *Bounds* and *Faretta* that would have required the trial court to permit the appellant

7

to have access to a law library.

Faretta, supra, addresses the compact statement of rights necessary for a full defense as set out in the Sixth Amendment:

> In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense. Id. 422 U.S. at 818, 95 S.Ct. at 2532.

To satisfy due process requirements, these basic rights must be afforded to every criminal defendant.

Contrary to the appellant's position, Faretta does not address meaningful access to the courts. In fact, Faretta acknowledges that a defendant's voluntary waiver of counsel in and of itself may result in a denial of meaningful access by stating:

> It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts. Id. at 834, 95 S.Ct. at 2540.

The Court in Faretta, supra, at n. 43, also cites Mr. Justice Sutherland in Powell v. Alabama, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932):

> Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he has a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect.

In spite of the recognized inherent inability of the vast majority of defendants to adequately represent themselves in a meaningful manner, the Court in Faretta still upholds the proposition that the accused has a right to represent himself when he competently and intelligently waives his right to assistance of counsel. Therefore, Faretta acknowledges that principles of due process are not violated when a defendant waives his right to counsel, even though by doing so he destroys any meaningful access to the court that he may have had.

In effect, the appellant argues that he is entitled to the benefits that would have been afforded to him had he had counsel; i.e., access to a law library. However, the Court in Faretta, supra 422 U.S. at 835, 95 S.Ct. at 2541, specifically states:

When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forego those relinquished benefits.

In assessing whether or not a defendant has made a knowing exercise of the right to defend himself, the Court in *Faretta, supra* at 836, 95 S.Ct. at 2541, also concludes that a determination of the defendant's technical legal knowledge is not relevant. Therefore, an assessment of the appellant's ability to obtain technical legal research was not relevant in this case in order for the court to determine that the appellant's waiver of counsel was competent.

It is undisputed that the appellant's repeated waiver of counsel and/or standby counsel was intelligent and competent. We find that by knowingly and intelligently waiving his right to counsel, the appellant also relinquished his access to a law library. Whatever issues may or may not be open to this appellant on appeal because he has waived his right to counsel, he cannot complain about the quality of his own defense by arguing that it amounted to ineffective assistance of counsel. *Faretta, supra,* at n. 46.

*United States v. Smith,* 907 F.2d 42, 44-45 (6th Cir. 1990).

This conclusion follows from *Bounds.* That case did not hold that a prisoner is entitled to an adequate law library; the Court held only that a prisoner is entitled to the tools necessary to access the courts. For this reason, "[i]t is well established that provision of legal counsel is a constitutionally acceptable alternative to a prisoner's demand to access a law library." *United States v. Cooper,* 375 F.3d 1041, 1051-52 (10th Cir. 2004) (citing *Lewis v. Casey,* 518 U.S. 343, 350-51 (1996)). If the state offers legal counsel, as it must do under the Sixth Amendment in a criminal case, it has given the defendant the tools necessary to access the courts. The defendant's voluntary choice to forgo using that tool imposes no additional obligation on the state. Thus, "when a person is offered appointed counsel but chooses instead to represent himself, he does not have a right to access to a law library." *United States v. Byrd,* 208 F.3d 592, 593 (7th Cir. 2000); *see also, Cooper,* 375 F.3d at 1052; *United States v. Kincaide,* 145 F.3d 771, 778 (6th Cir. 1998). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

9

### b. Discovery/Experts

Petitioner's attempt to portray his discovery and expert witness claims as self-representation claims is equally unavailing. No clearly established federal law, as determined by the Supreme Court, suggests that a *pro se* defendant is entitled, as part of the Sixth Amendment right of self-representation, to greater access to discovery and experts in order to protect that right. On the contrary, it is a long-standing and well-understood proposition that "[a] defendant who knowingly and intelligently assumes the risks of conducting his own defense is entitled to no greater rights than a litigant represented by counsel." *United States v. Flewitt*, 874 F.2d 669, 675 (9th Cir. 1989); *accord Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981); *see also*, *United States v. Barfield*, 969 F.2d 1554, 1558 (4th Cir. 1992) ("a trial judge is under no heightened obligation to assist a defendant who chooses to represent himself or herself in a criminal case."). Thus, while the underlying substantive claims relating to discovery and expert witnesses may or may not be a basis for relief–an issue discussed below–they do not implicate petitioner's Sixth Amendment right to represent himself. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this basis.

### c. Ineffective Assistance of Standby Counsel

Petitioner also suggests that his standby counsel was ineffective because counsel did not meet with him until shortly before the trial, did not conduct adequate legal research on his behalf, and failed to provide him with the discovery turned over by the prosecution until shortly before or during trial. The Court should conclude that this does not provide a basis for habeas relief.

Although it is advisable for a trial court to appoint standby counsel to assist a *pro se* criminal defendant– and indeed a court may do so even over the defendant's objection, *see Faretta*, 422 U.S.

10

at 834 n.6–there is no constitutional right to the appointment of standby counsel, nor is a court required to permit "hybrid" representation by a *pro se* defendant and standby counsel together. *See United States v. Cromer*, 389 F.3d 662, 681 n.12 (6th Cir. 2004) (citing *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984)); *United States v. Bova*, 350 F.3d 224, 226 (1st Cir. 2003); *United States v. Einfeldt,* 138 F.3d 373, 378 (8th Cir. 1998). And, "[w]here there is no constitutional right to counsel there can be no deprivation of effective assistance." *Coleman v. Thompson*, 501 U.S. 722, 752 (1991); *see also, Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982) (per curiam). For this reason, the allegedly ineffective assistance of standby counsel does not provide a basis for relief. *See United States v. Morrison*, 153 F.3d 34, 55 (2d Cir. 1998); *United States v. Windsor*, 981 F.2d 943, 947 (7th Cir. 1992). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this basis.

      2.    *Discovery/Expert Claims*

To the extent that petitioner asserts his discovery and expert claims as independent bases for relief apart from his self-representation claim, the Court should conclude that these claims lack merit.

      1.    *Discovery*

Petitioner contends that he was denied an opportunity to present a meaningful defense by the belated disclosure of certain discovery items, and by the complete failure of the prosecution to disclose other items. Specifically, petitioner contends that: (1) the complete preliminary examination transcripts, witness statements, and police reports were provided three days prior to trial; (2) the medical reports were provided two days into the trial; and (3) he was never provided the 911 tape relating to the incident, crime scene videotapes, auto records, cellular telephone records, the crime

11

scene map, the evidence technician report, and that police officer's handwritten notes.

### a. Clearly Established Law

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. However, "there is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Thus, in order to establish a *Brady* violation, petitioner must show that the prosecutor (1) withheld evidence that was both (2) favorable to the accused and (3) material to guilt or punishment. *See United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988). Furthermore, regardless of the exculpatory nature or materiality of the evidence withheld by the prosecution, "[n]o *Brady* violation exists where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available to defendant from another source." *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991) (citations omitted) (internal quotation omitted); *accord United States v. Mullins*, 22 F.3d 1365, 1371 (6th Cir. 1994). Thus, petitioner's claim raises three questions: (1) was the evidence suppressed by the prosecution in that it was not known to petitioner and not available from another source?; (2) was the suppressed evidence favorable or exculpatory?; and (3) was the evidence material to the question of petitioner's guilt? *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *Luton v. Grandison*, 44 F.3d 626, 628-29 (8th Cir. 1994); *see also, Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972). Petitioner bears the burden of establishing each of these three elements. *See Carter*, 218 F.3d at 601. If all three of these questions are answered in the affirmative, petitioner has

12

established a constitutional error entitling him to the writ of habeas corpus, and "there is no need for further harmless-error review." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995). If, on the other hand, any of these three questions is answered in the negative, then petitioner has failed to establish a *Brady* violation.

### b. Analysis

As noted above, "[t]here is no general constitutional right to discovery in a criminal case." *Weatherford*, 429 U.S. at 559; *see also*, *Gray v. Netherland*, 518 U.S. 152, 168 (1996); *Wardius v. Oregon*, 412 U.S. 470, 474 (1973) ("the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded."). Thus, petitioner cannot obtain relief merely by showing that evidence subject to the trial court's discovery order was not disclosed. Rather, he must show that the evidence was exculpatory, material evidence under *Brady*. Petitioner cannot make this showing.

Even assuming that the evidence was indeed suppressed by the prosecution,[1] petitioner has failed to show that the evidence was either exculpatory or material. Nowhere in his petition or brief does petitioner describe what exculpatory, material information was contained in the allegedly suppressed material, or how the disclosure of that evidence would have affected his trial.

---

[1] There are several difficult questions relating to the suppression issue. For instance, although not clear from the record, petitioner's brief suggests that the prosecution had turned over this evidence to standby counsel well in advance of trial, but that counsel had failed to relay the material to him. In such a case, is standby counsel an "arm of the state" such that his failure to provide the material amounts to suppression by the prosecution? Further, was the information that was disclosed provided to petitioner in sufficient time for him to use the information of trial, regardless of the belatedness of the disclosure? *See United States v. Davis*, 306 F.3d 398, 421 (6th Cir. 2002) ("Delay violates *Brady* only where the delay causes prejudice."). Because petitioner's *Brady* claims fail on the other elements of the *Brady* inquiry, the Court need not answer these questions and may assume, for the purpose of analysis, that the information was indeed "suppressed" within the meaning of *Brady*.

13

Petitioner's allegations are therefore "speculative, conclusory and unsupported, and thus must be rejected." *Franza v. Stinson*, 58 F. Supp. 2d 124, 154 (S.D.N.Y. 1999); *see also, Carter*, 218 F.3d at 601 (petitioner bears burden of establishing each element of *Brady* claim).

There having been no constitutional violation in the failure of the prosecution to disclose this evidence, the mere fact that the state court's discovery order was violated is insufficient to warrant habeas relief because "the failure to produce the [evidence] pursuant to the discovery order of the state court, even if error as a state procedural matter, does not rise to a constitutional level." *Biddy v. Diamond*, 516 F.2d 118, 124 (5th Cir. 1975). The Ninth Circuit's recent decision in *Coleman v. Calderon*, 150 F.3d 1105 (9th Cir. 1998), is instructive. In *Coleman*, the Ninth Circuit rejected a petitioner's claim that the state court's failure to disclose an inculpatory fingerprint found at the crime scene in violation of the trial court's discovery order warranted habeas relief. The Court reasoned:

> The district court assumed without deciding that the prosecution did indeed violate the state court discovery order. We make the same assumption. This violation of state law, however, does not alter the holding of *Gray*. The evidence withheld from the defense was inculpatory evidence, and there is no constitutional requirement that a state prosecutor provide the defense with inculpatory evidence. *Gray*, 518 U.S. at 168. And, absent some constitutional violation, a violation of state law does not provide a basis for habeas relief.

*Coleman*, 150 F.3d at 1112. Accordingly, the Court should conclude that petitioner is not entitled to the writ of habeas corpus based on the prosecution's violation of the state court discovery order.

2.    *Experts*

Petitioner also contends that he was denied a fair trial by the trial court's failure to provide him with a ballistics expert, a vehicle expert, a private investigator, and a jury consultant. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

14

Petitioner has identified no clearly established federal law as determined by the Supreme Court which entitles him to any independent experts as necessary to obtain relief under § 2254(d)(1). The only case arguably on point is *Ake v. Oklahoma*, 470 U.S. 77 (1985). The Supreme Court's holding in *Ake*, however, was limited:

> We therefore hold that when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense.

*Id.* at 83. The Court did not discuss a defendant's entitlement to other court appointed experts outside the context of an insanity defense. And, subsequent to *Ake*, the Supreme Court has explicitly declined to answer this question. *See Caldwell v. Mississippi*, 472 U.S. 320, 323 n.1 (1985).

In light of the language of *Ake* and the Court's reservation in *Caldwell*, there is disagreement over whether *Ake* requires the provision of expert services beyond psychiatric services necessary to present an insanity defense. *Compare, e.g., Terry v. Rees*, 985 F.2d 283, 284 (6th Cir. 1993) (petitioner denied an opportunity to present an effective defense by failure to appoint independent pathologist), *with Baxter v. Thomas*, 45 F.3d 1501, 1511 n.24 (11th Cir. 1995) *and Moore v. Kemp*, 809 F.2d 702, 736-37 (11th Cir. 1987) (en banc) (Hill, J., concurring in part and dissenting in part) (declining to extend *Ake* to non-psychiatric experts).

Under the AEDPA, however, the question is not whether this Court, or the Sixth Circuit, would extend *Ake* to require the provision of non-psychiatric experts. Rather, the question is whether *Ake* itself clearly establishes petitioner's right to the appointment of such experts. In a number of pre-AEDPA cases, courts have held that extending *Ake* to non-psychiatric experts would amount to a "new rule" of constitutional law which could not be applied on collateral review under

15

the Supreme Court's decision in *Teague v. Lane*, 489 U.S. 288 (1989). *See Gray v. Thompson*, 58 F.3d 59, 66 (4th Cir. 1995), *vacated on other grounds*, 518 U.S. 152 (1996); *Jackson v. Ylst*, 921 F.2d 882, 885-86 (9th Cir. 1990). The *Teague* rule is "the functional equivalent" of the clearly established law requirement of § 2254(d)(1), *see Williams*, 529 U.S. at 379 (opinion of Stevens, J.), and thus a rule which fails to satisfy *Teague* will also fail to satisfy § 2254(d)(1). *See id.* at 380 (opinion of Stevens, J.); *id.* at 412 (opinion of O'Connor, J., for the Court). *See generally, Williams v. Cain*, 229 F.3d 468, 474-75 (5th Cir. 2000) (discussing relationship between *Teague* and § 2254(d)(1)). Thus, petitioner's asserted right to the appointment of non-psychiatric experts was not clearly established law under § 2254(d)(1) at the time of his conviction. *See Weeks v. Angelone*, 4 F. Supp. 2d 497, 521-22 (E.D. Va. 1998), *aff'd*, 176 F.3d 249, 264-65 (4th Cir. 1999), *aff'd on other grounds*, 528 U.S. 225 (2000). Accordingly, the Court should conclude that petitioner is not entitled to relief on this claim.

D.    *Prosecutorial Misconduct Claims (Claim II)*

Petitioner next contends that he was denied a fair trial by various instances of prosecutorial misconduct. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Procedural Default*

Respondent argues that petitioner's habeas claims are barred by his procedural default because petitioner failed to raise these claims on his direct appeal. Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991).

16

However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris*, 489 U.S. at 263. Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also, Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.").

Petitioner here challenges several of the prosecutor's statements during closing argument. However, petitioner failed to object to these comments at trial, and the Michigan Court of Appeals explicitly declined to consider the merits of the claims on this basis. *See LeFevre*, 2001 WL 832987, at *2, slip op. at 2-3.[2] Michigan's contemporaneous objection rule, which was firmly established at the time of petitioner's trial, provides that an appellate court will not review a trial court's rulings with respect to evidentiary matters or jury instructions, in the absence of an objection by the defendant, unless manifest injustice would thereby result. *See, e.g., People v. Duncan*, 402 Mich. 1, 15-16, 260 N.W.2d 58, 61-62 (1977); *People v. Curry*, 175 Mich. App. 33, 39, 437 N.W.2d 310, 314 (1989). As the state court clearly and expressly relied on this state procedural rule with respect to petitioner's prosecutorial misconduct claims, these claims are barred absent

---

[2]The court of appeals did consider the merits of the claims to determine whether the prosecutor's comments amounted to plain error. The fact that the state court considered the merits of petitioner's claims to the extent of determining whether a manifest injustice would occur by failing to consider those claims does not alter this analysis. *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989); *Cooey v. Anderson*, 988 F. Supp. 1066, 1085-86 (N.D. Ohio 1997).

a showing of either cause and prejudice or a fundamental miscarriage of justice. *See Engle v. Isaac*, 456 U.S. 107, 125-129 (1982) (state contemporaneous objection rule is adequate procedural bar precluding consideration of habeas claims).

Here, petitioner cannot show cause for and prejudice attributable to his default. Petitioner has asserted no cause to excuse his default, nor could he. The only possible basis upon which to assert cause would be petitioner's *pro se* status at trial. However, petitioner's *pro se* status at the time of the default does not constitute cause to excuse the default. *See Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004); *Hannah v. Conley*, 49 F.3d 1193, 1197 (6th Cir. 1995). Further, as explained below, petitioner's claims are without merit, and thus he cannot establish that he will be prejudiced by application of the procedural bar to his claims.

Nor can petitioner establish that failure to consider his prosecutorial misconduct claims on the merits will result in a fundamental miscarriage of justice. Under this exception, petitioner can still have his procedurally barred claims reviewed if he can show that the constitutional errors he alleges "'ha[ve] probably resulted in the conviction of one who is actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Murray*, 477 U.S. at 496); *accord Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986). "[T]o establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" *Bousley*, 523 U.S. at 623 (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995) (internal quotation omitted)); *accord Kuhlmann*, 477 U.S. at 455 n. 17 (citation omitted). "[T]o be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence that was not presented at trial." *Schlup*, 513 U.S. at 324. Here, although petitioner generally maintains his innocence, he has offered no new, reliable

18

evidence which was not presented at trial. Thus, he cannot establish that application of the procedural bar to his claims will result in a fundamental miscarriage of justice.

### 2.    *Merits of the Claim*

In any event, even were the Court to consider petitioner's claim on the merits, the Court should conclude that petitioner is not entitled to habeas relief.

### a. *Clearly Established Law*

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation omitted). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In determining whether the prosecutor's conduct was so egregious as to warrant habeas relief, a court should consider "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the competent proof to establish the guilt of the accused." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotations and citations omitted). In sum, to constitute a denial of due process the prosecutor's conduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id.* (internal quotation omitted).

### b. *Analysis*

Petitioner does not identify in his habeas application or brief any particular statements by the prosecutor which he contends constituted misconduct. In the state court, however, petitioner pointed

19

to the prosecutor's reference to him as a "smooth talker" and a "manipulator," *see* Trial Tr., Vol. IV, at 46; the prosecutor's statement that petitioner's testimony was a "fabrication" and was "created for the purpose of this trial," *see id.* at 49-50; and the prosecutor's request that the jury compare petitioner's testimony to the physical evidence because the "physical evidence, ladies and gentlemen, is not going to lie to you," *see id.* at 52. The Court should conclude that petitioner is not entitled to habeas relief on the basis of these comments.

As the Michigan Court of Appeals correctly noted, the prosecutor's comments went to his credibility, not to his right to participate in his defense, and were based on the evidence adduced at trial. *See People v. LeFevre*, 2001 WL 832987, at *2, slip op. at 3. The comments were thus proper. *See, e.g., Nichols v. Scott*, 69 F.3d 1255, 1283 (5th Cir. 1995) (comment "is permissible to the extent that it draws a conclusion based solely on the evidence presented.") (internal quotation omitted); *United States v. Grey Bear*, 883 F.2d 1382, 1392 (8th Cir. 1989); *Martin v. Foltz*, 773 F.2d 711, 717 (6th Cir. 1985) (prosecutor may argue permissible inferences from the evidence); *United States ex rel. Williams v. Washington*, 913 F. Supp. 1156, 1163 (N.D. Ill. 1995) (prosecutor's assertion during closing argument that the defendant had "lied" did not deprive petitioner of a fair trial where "the prosecution's statements were reasonable inferences drawn from the physical evidence and witness testimony[.]"). Further, the prosecutor's comments that petitioner was a "manipulator" trying to "con" the jury with testimony created solely for trial, even if improper, were not so egregious as to amount to a denial of due process in light of the evidentiary basis for these assertions. *See United States v. August*, 984 F.2d 705, 714-15 (6th Cir. 1992) (on direct review of federal conviction, prosecutor's comment that defense counsel was trying to trick the jury did not rise to the level of prosecutorial misconduct); *Lindgren v. Lane*, 925 F.2d 198, 204 (7th Cir. 1991)

20

(prosecutor's comments that defense theory was rife with inconsistencies, that defense counsel pulled "these inconsistencies like a magician pulls rabbits out of his hats," and that defense counsel was trying to "trick" the jury with "illusions" were not so egregious as to warrant habeas relief); *Irwin v. Singletary*, 882 F. Supp. 1036, 1043-44 (M.D. Fla. 1995) (habeas relief not warranted based on prosecutor's statement during closing argument that defendant was "grasping at straws"). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on these claims.

E.     *Conclusion*

In view of the foregoing, the Court should conclude that the Michigan Court of Appeals's resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

*Paul J. Komives*

PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: March 29, 2005

22